**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
**NYCOMED US, INC.,**

                              Plaintiff,                  **MEMORANDUM AND ORDER**

              -against-                                  08-CV-5023 (CBA)

**GLENMARK GENERICS, INC., et al.,**

                              **Defendants.**
----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       On December 17, 2009, in response to the parties' continual "overdesignation" of court filings as confidential,[1] this Court issued an order that, "[b]y January 8, 2010, counsel shall review all court briefs and correspondence and other documents crafted by litigation counsel and filed with the Court since September 2009, and, with respect to any portion thereof that counsel wishes to retain under seal, counsel shall make a particularized showing as to why that portion should not be made public." Minute Order (Dec. 17, 2009) ("12/17/09 Order") at 2, D.E. #212.[2] Thereafter, Nycomed and Glenmark each submitted a request to maintain limited portions of court filings under seal. See Letter to the Court from Donald L. Rhoads (Jan. 8, 2010) ("Nycomed 1/8/10 Letter"), D.E. #216; Letter to the Court from Brian T. Moriarty

---

[1] See, e.g. Transcript of August 7, 2009 Telephone Conference at 3-4, Docket Entry ("D.E.") #132; Transcript of December 4, 2009 Oral Argument ("12/4/09 Tr.") at 13, D.E. #213; Minute Order (Dec. 4, 2009), D.E. #207; Transcript of December 17, 2009 Oral Argument ("12/17/09 Tr.") at 2-3, 4-6, D.E. #211.

[2] The Court excluded from this review -- "for the time being" -- "all pre-existing documents filed as exhibits . . . ." 12/17/09 Order at 2. The temporal restriction was first proposed by defense counsel, who offered to work with his adversary to create a "standard" that would apply to the entire case. See 12/17/09 Tr. at 6, 9-10.

(Jan. 8, 2010) ("Glenmark 1/8/10 Letter"), D.E. #215.  For the reasons that follow, Nycomed's and Glenmark's requests are both denied.

## FACTUAL BACKGROUND

On April 3, 2009, this Court modified and so-ordered a stipulated protective order ("Stipulation") submitted by the parties.  See Stipulation, D.E. #65.  Pursuant to that Stipulation, the "Producing Party" was permitted to designate materials as "Confidential" or "Confidential -- Attorneys Eyes Only."  See id. ¶ 10.  All documents, including briefs, that contained information designated as either level of "Confidential" were to be filed under seal, and a copy publicly filed via ECF, with such "Confidential Material" redacted.  See id. ¶ 14.[3]  The Stipulation further provided that "[a]t any time after the receipt of any Discovery Materials designated 'Confidential' or 'Confidential -- Attorneys' Eyes Only,' counsel for a Receiving Party may challenge the designation . . . [and] [t]he party seeking [to maintain the designation] shall have the burden of establishing that any Discovery Material in dispute is entitled to protection from unrestricted disclosure and to such designation."  Id. ¶ 13.

Although nearly all of the parties' submissions contain redacted portions, this Court's Order of December 17, 2009 required the parties to reconsider the filings, not including exhibits, submitted since September 2009.  See 12/17/09 Order at 2.  The parties identified eight submissions that were filed under seal, with redacted versions publicly filed on ECF.  See D.E. #143, 144, 145, 146, 147, 152, 169, 190.  Of those, portions of only two are the

---

[3] The parties had stipulated that the entire submission would be filed under seal; in its one modification to the Stipulation, the Court added a provision that "[t]he party filing the sealed document shall simultaneously file, via ECF, a copy of the same document, redacted to omit any information that contains Confidential Material."  Stipulation ¶ 14.

subjects of the parties' respective requests to maintain confidentiality. Specifically, Nycomed objects to the unsealing of the identity of the individual named in D.E. #190, a letter to the Court dated November 13, 2009 ("Glenmark Letter Motion to Amend"), wherein Glenmark sought permission to amend its answer and counterclaims and to add new inequitable conduct allegations naming that individual. See Nycomed 1/8/10 Letter at 1.[4] Glenmark similarly asks the Court to maintain certain redactions in a single document, specifically, two paragraphs contained in Nycomed's Letter Motion to Amend the Complaint, D.E. #143 ("Nycomed Letter Motion to Amend"). See Glenmark 1/8/10 Letter at 1. Glenmark contends that the paragraphs in question "contain confidential information regarding Glenmark's ANDA that was submitted to the FDA." Id. Each side opposes the other's request to maintain confidentiality. See Glenmark 1/8/10 Letter at 2.

## THE APPLICABLE LEGAL STANDARDS

Rule 26(c) of the Federal Rules of Civil Procedure governs a court's power to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.'" In re Zyprexa Injunction, 474 F.Supp.2d 385, 415 (E.D.N.Y. 2007); see also Fed. R. Civ. P. 5.2(e)(1) ("For good cause, the court may by order in a case . . . require redaction" of information other than social

---

[4] Although not mentioned in Nycomed's January 8th request, Nycomed has proposed similar redactions to the transcript of oral argument on that motion, on December 4, 2009. See 12/4/09 Tr. at 56, 59-61, 63-65, 69-70, 77, 79-80, 83, D.E. #213. The Court's ruling herein is equally applicable to those redactions.

security numbers and other data expressly protected under Rule 5.2(a)). Ordinarily, 'good cause' is satisfied if "a 'clearly defined and serious injury' . . . would result from disclosure of the document." Allen v. City of New York, 420 F.Supp.2d 295, 302 (S.D.N.Y. 2006) (quotations and citations omitted); J. Moore, 6 Moore's Federal Practice & Procedure § 26.104[1], at 510-12 (3d ed. 2009). Where the document sought to be shielded from disclosure is part of the official court file, the Court must consider the public's presumptive right of access to such materials in making its determination as to good cause.

**A.     The Common Law Right of Public Access**

"The courts have long recognized a common law right of public access to judicial documents." Stern v. Cosby, 529 F.Supp.2d 417, 420 (S.D.N.Y. 2007) (quotations and citations omitted); see, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). As the Second Circuit explained:

> Transparency is pivotal to public perception of the judiciary's legitimacy and independence. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.

United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (quotation and citation omitted).

While the existence of the common law right to inspect and copy judicial documents is beyond dispute, it is equally clear that it is not absolute. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978); accord United States v. Graham, 257 F.3d 143, 149 (2d Cir. 2001). Rather, the qualified common law right gives rise to a presumption of public access, the weight of which presumption "must be governed by the role of the material at issue in the

exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").

"The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." Stern, 529 F.Supp.2d at 420 (citing Lugosch, 435 F.3d at 119-20; Amodeo II, 71 F.3d at 1048-52).

> First, the court must determine whether the documents are indeed judicial documents, to which the public has a presumptive right of access. Second, if the documents are judicial documents, the court must determine the weight of the presumption, that is, whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason[,] or whether the presumption is somewhere in between. Third, once the weight of the presumption is determined, a court must balance competing considerations against it. Countervailing factors include, among others, the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure.

Stern, 529 F.Supp.2d at 420 (internal quotations and citations omitted); accord Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 158-60 (S.D.N.Y. 2003).

Regarding the first step, whether the common law presumption of access applies, "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies." Lugosch, 435 F.3d at 122 (quotations and citations omitted). Regarding the second step, the weight of the presumption depends on the "role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a

continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Amodeo II, 71 F.3d at 1049. Legal briefing "used by parties moving for, or opposing" a dispositive motion fall on the far end of the continuum and are subject to the strongest presumption. Lugosch, 435 F.3d at 123; see Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) ("the presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'"); Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."); Stern, 529 F.Supp.2d at 422 (reasoning that the strength of the presumption turns on whether the submissions were made in support of a motion on the merits); Diversified Group, 217 F.R.D. at 158-59 ("The presumption is given great weight where the requested documents were . . . material to a court's disposition of a case on the merits.").

**B.     The First Amendment Right of Public Access**

The Second Circuit has also recognized a qualified constitutional presumption of access to both civil and criminal proceedings and judicial documents, arising under the First Amendment. See Lugosch, 435 F.3d at 124; see also Gambale, 377 F.3d at 140 & n.4. Like the common law presumptive right of access to judicial documents, the "more stringent First Amendment framework"[5] is not limited to documents filed in connection with summary judgment motions. See United States v. Tangarra, 542 F.Supp.2d 233, 235-37 (E.D.N.Y.

---

[5] Lugosch, 435 F.3d at 124.

2008) (disclosing business-related documents submitted by criminal defendants as part of the sentencing process); In re NBC Universal, Inc., 426 F.Supp.2d 49, 56-58 (E.D.N.Y. 2006) (disclosing transcripts filed in connection with government's motion to disqualify criminal defense counsel).

The Second Circuit has fashioned several analytical frameworks for determining the applicability of First Amendment protections. Of these, the so-called "experience and logic" approach considers whether the disputed documents "'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Lugosch, 435 F.3d at 120 (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 92 (2d Cir. 2004)). That inquiry, in turn, looks to "the common law right of access to judicial documents in support of finding a history of openness." Id. Although there thus is substantial overlap between the First Amendment and common law rights of access, "[t]he First Amendment demands broader *disclosure* than the common law." NBC Universal, 426 F.Supp.2d at 56 (citing Lugosch, 435 F.3d at 124). Documents subject to a qualified First Amendment right of access "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings . . . are not sufficient to justify closure." Id.; accord Tangorra, 542 F.Supp.2d at 237.

## BALANCING THE COMPETING INTERESTS

The two documents at issue here are letter briefs in support of motions to amend the

parties' respective pleadings, which clearly constitute "judicial documents." Although these letter briefs cannot be characterized as summary judgment papers, they nevertheless do relate to motions that, if denied, might be dispositive of at least some of the parties' claims and defenses. Cf. Lugosch, 435 F.3d at 121-23 (the weight to be accorded the presumption of access is governed by the nature of the motion to which the document relates and not to the ultimate outcome of that motion). Accordingly, even if the disputed documents are not subject to the strongest possible presumption of public access, and even assuming *arguendo* that they do not trigger the First Amendment presumption of access, they do fall on the side of the common law continuum strongly favoring public access.

Having determined that the materials in question are judicial documents, the Court must next decide whether countervailing factors outweigh the relatively strong presumption of access.[6]

---

[6] As a preliminary matter, the Court observes that neither side has sought to justify continued sealing on the ground that the information revealed in the letter briefs was disclosed pursuant to a protective order and that therefore they are entitled to a "strong presumption *against* access to documents sealed under protective order . . . ." S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001) (emphasis in original) (citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291 (2d Cir. 1979)). This omission is understandable, as the law is clear that the countervailing presumption against public access does not apply where, as here, confidentiality designations are made without a showing of good cause. See Schiller v. City of New York, No. 04 Civ. 7922 KMK JCF, 2007 WL 136149, at *3 (S.D.N.Y. Jan. 19, 2007) ("Where a protective order permits parties to designate discovery materials as 'Confidential' without a showing of good cause, and one party challenges a designation made by another, the challenging party is not seeking to modify the protective order and therefore does not bear the burden of demonstrating that the confidentiality designations should be lifted."). Moreover, the *Martindell* presumption applies only to those materials produced "under a protective order when there was reasonable reliance upon such an order . . . ." TheStreet.com, 273 F.3d at 231. As the stipulated protective order in this case explicitly provides that parties may

(continued…)

## A. The Information Glenmark Seeks to Protect

Glenmark seeks to retain the sealed status of two paragraphs on page two of Nycomed's Letter Motion to Amend the Complaint, D.E. #143. See Glenmark 1/8/10 Letter at 1. In particular, Glenmark alleges that these two paragraphs "contain confidential information regarding Glenmark's ANDA that was submitted to the FDA." Id. Citing a regulation of the Food and Drug Administration, to wit, 21 C.F.R. § 314.430(d)(1), Glenmark contends that "[a]n ANDA contains confidential information that is not publicly available." Glenmark 1/8/10 Letter at 1. The referenced regulation, which governs disclosure *by the FDA* of information submitted in conjunction with the drug approval process, provides that:

> If the existence of an application or abbreviated application has been publicly disclosed or acknowledged before the agency sends an approval letter to the applicant, no data or information contained in the application or abbreviated application is available for public disclosure before the agency sends an approval letter, but the Commissioner may, in his or her discretion, disclose a summary of selected portions of the safety and effectiveness data that are appropriate for public consideration of a specific pending issue; for example, for consideration of an open session of an FDA advisory committee.

21 C.F.R. § 314.430(d)(1).

Section 314.430(d)(1) thus makes clear that ordinarily, the FDA does not disclose information contained in a pending ANDA. This regulation does not, however, guarantee that all information contained in an ANDA is necessarily shielded from disclosure if included in a

---

⁶(…continued)
challenge any confidentiality designation, see Stipulation ¶ 13, any reliance on that Stipulation "is insufficient to outweigh the strong presumption in favor of public access." Diversified Group, 217 F.R.D. at 160; accord Gambale, 377 F.3d at 142 n.7 ("[P]rotective orders that are on their face temporary or limited [do] not justify reliance by the parties.") (quoting TheStreet.com, 273 F.3d at 231).

judicial document.  Certainly, any information that is already public, or is independently made public, cannot be deemed confidential.  Furthermore, the cited regulation governs disclosures by the FDA and does not prohibit disclosure by a third party, or the applicant.  See 21 C.F.R. § 314.430(b).

Relying on a decision from the District of New Jersey, Glenmark notes that from time to time, federal courts have looked to the FDA's policy of non-disclosure in maintaining the confidentiality of previously undisclosed pending ANDA filings.  See Glenmark 1/8/10 Letter at 1 (citing In re Gabapentin Litig., 312 F.Supp.2d 653, 667 n.7 (D.N.J. 2004)).  In Gabapentin, which affirmed the magistrate judge's determination that the parties' summary judgment filings contained "highly confidential trade secrets," see Gabapentin, 312 F.Supp.2d at 667, the district court observed in a footnote that members of the press or the public "should not be able to gain access to that information through a court case arising out of an ANDA filing when it could not obtain the information in the ANDA filing directly."  Id. at 667 n.7.  The district court did not, however, end its analysis there.  Rather, the court looked to the precise nature of the information at issue -- which included "secret chemical formulas [and] the parties' suppliers," id. at 667 -- and on that basis affirmed the lower court's conclusion that "each of the parties ha[d] made a specific showing of the harm that would be caused by disclosure of" their trade secrets and thus had made a "particularized showing of a need for continued secrecy sufficient to overcome the presumption of access[.]"  Id. at 664-65.  Significantly, the parties' assertions of trade secret protection were supported by sworn certifications and declarations.  See id. at 668.

In contrast to Gabapentin, Glenmark has made no evidentiary showing whatsoever that the information that it seeks to maintain under seal is a trade secret within the meaning of Rule 26(c)(1), which provides that a court may, for good cause shown, "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Fed. R. Civ. P. 26(c)(1)(G). Instead, Glenmark relies solely on the FDA's regulation and the Gabapentin Court's dictum in footnote 7. In doing so, Glenmark ignores the fact that where confidential business information is contained in a judicial document, the interest in maintaining secrecy must be weighed against the presumption of public access. See Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F.Supp.2d 606, 612 (S.D.N.Y. 1998). In this connection, the "party seeking to preclude disclosure of trade secrets has the burden to show that the information in fact constitutes a trade secret, that disclosure would harm movant's competitive position and that the asserted harm outweighs the presumption of public access." Id. at 613.

To assess whether information constitutes a trade secret, courts in this circuit have looked to the Restatement of Torts, which defines a trade secret as "any formula, pattern device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Softel, Inc., v. Dragon Med. & Scientific Commc'ns, 118 F.3d 955, 968 (2d Cir. 1997) (quoting RESTATEMENT OF TORTS § 757 cmt. b at 5 (1939)). "[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public." Salomon Smith Barney, Inc. v. HBO & Co.,

98 Civ. 8721(LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001). "In determining whether information warrants protection as a [Rule 26(c)(G)] trade secret, courts have considered the following: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the measures taken to guard the information's secrecy; (4) the value of the information to the business or to its competitors; (5) the amount of time, money, and effort expended in development of the information; and (6) the ease or difficulty [in] duplicating or properly acquiring the information." Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., 236 F.R.D. 129, 136 (E.D.N.Y. 2006).

In other words, an assertion of confidential business information, without more, will not merit trade secret protection. "The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat Secs. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (collecting cases); see Encyclopedia Brown, 26 F.Supp.2d at 613 ("With respect to proof of competitive harm, vague and conclusory allegations will not suffice. Movant must prove that disclosure would work a clearly defined and very serious injury.") (internal quotations and citations omitted); see also Prescient Acquisition Group, Inc. v. MJ Publ'g Trust, 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007) (court *sua sponte* required any party seeking to maintain court filings under seal to "identif[y] with particularity (*i.e.* page and line) the precise information . . . which the party maintains should be kept under seal [and]

demonstrat[e] the particular need for sealing the information").

Glenmark's conclusory assertion of confidentiality does not come close to satisfying this standard and thus does not outweigh the strong presumption of public access to the redacted information contained in a judicial document. The two referenced portions of Nycomed's letter brief do not contain any formulas, data, or specific study results submitted to the FDA in support of Glenmark's pending ANDA. The briefing at issue reveals the existence of a study submitted to the FDA, and contains accusations that Glenmark wrongfully withheld documents concerning the study during discovery in this litigation, deviated from its study protocol, made false and misleading submissions to the FDA, and violated its duty of candor and fair dealing. See Nycomed Letter Motion to Amend at 2, D.E. #143.

The existence of the ANDA and Glenmark's bioequivalance study are facts already disclosed in this lawsuit, including in unredacted portions of that same letter motion. See, e.g., id. at 1. Nycomed's accusations of misconduct are the only disclosures contained in the two paragraphs in question, and these were similarly discussed in open proceedings before this Court. See 12/4/10 Tr. at 10-11, D.E. #213; 12/17/09 Tr. at 9, D.E. #211.[7] Nycomed's allegations of wrongdoing do not reveal any of Glenmark's trade secrets or even specific ANDA information maintained as confidential by the FDA. Although Glenmark's desire to shield this information from public view is understandable, "[c]ompetitive harm should not be taken to mean simply any injury to competitive position, as might flow . . . from embarrassing

---

[7] The dates for the parties to redact the transcripts of those proceedings have passed, the transcript of the earlier proceeding has been made publicly available, and the transcript of the later proceeding is scheduled to be released next week. See ECF Docket Entry (Dec. 8, 2009), D.E. #210; ECF Docket Entry (Dec. 18, 2009), D.E. #211.

publicity attendant upon public revelations." Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1291 n.30 (D.C. Cir. 1983); accord Bloomberg L.P. v. Board of Governors, 649 F.Supp.2d 262, 279 (S.D.N.Y. 2009); see Lugosch, 435 F.3d at 123 n.5 ("[T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public . . . cannot be accommodated by the courts without seriously undermining the tradition of an open judicial system.") (quoting Brown & Williamson Tobacco v. FTC, 710 F.2d 1165, 1180 (6th Cir. 1983)).

Consequently, Glenmark has established neither good cause to maintain the secrecy of "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 26(c)(1)(G), nor a countervailing interest sufficient to outweigh the strong presumption of public access. Glenmark's request to maintain the sealed status of the redacted portions of Nycomed's Letter Motion to Amend its Complaint is thus denied.

**B.     The Information Nycomed Seeks to Protect**

Nycomed seeks to maintain several redactions in Glenmark's 11/13/09 Letter Motion To Amend its Answer, D.E. #190, to wit, the identity of the individual named in Glenmark's proposed inequitable conduct allegations. See Nycomed 1/8/10 Letter at 1. Glenmark objects to this confidentiality designation, arguing, without citation to authority, that the identification of the individual is a pleading requirement and that "none of Nycomed's confidential information is disclosed in that document." Glenmark 1/8/10 Letter at 2. Nycomed, on the other hand, cites the Federal Circuit's decision in Exergen Corp. v. Wal-Mart Stores, 575 F.3d 1312, 1328 n.6 (Fed. Cir. 2009), to support its request for confidentiality. See Nycomed 1/8/10 Letter at 1, 4.

In Exergen, a patent case construing Rule 9(b) of the Federal Rules of Civil Procedure, the Federal Circuit established a heightened pleading requirement for allegations of inequitable conduct, requiring (among other things) the identification of the particular individual involved in the alleged misconduct. See id. at 1328-29. The Exergen Court then added, in dictum:

> Because one of the purposes of Rule 9(b) is "to protect those whose reputation would be harmed as a result of being subject to fraud charges," Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009), a district court may require that filings be made under seal, require redaction of individuals' names, and impose other safeguards under Federal Rules of Civil Procedure 5.2(d)-(e) and 26(c), or other sources of protective authority.

Id. at 1328 n.6. Thus, the Federal Circuit recognized the discretion of the trial court to take steps to protect the reputation of the individual named in inequitable conduct allegations. See generally Nixon, 435 U.S. at 599 ("[T]he decision as to access is one best left to the sound discretion of the trial court . . . ."); accord In re Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990). Contrary to Nycomed's contention, the Exergen Court did *not* "recommend[]" redaction of those names. Nycomed 1/8/10 Letter at 1, 4. Furthermore, Nycomed concedes, as it must, that because sealing issues are not unique to patent law, regional circuit law controls. See 12/4/09 Tr. at 14-15; see generally Exergen, 575 F.3d at 1318; Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1354 (Fed. Cir. 2009).

As the Second Circuit has observed, "the privacy interests of those resisting disclosure" is a countervailing factor that should be weighed against the presumption of public access in determining whether to seal portions of judicial records. See Amodeo II, 71 F.3d at 1050. In this connection, "[t]he nature and degree of injury must [] be weighed. This will entail

consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." Id. at 1051. More specifically:

> Among the factors for a court to consider in evaluating the privacy interest of those opposing disclosure are the following: (1) the privacy interests of "innocent third parties," which constitute a "venerable common law exception to the presumption of access"; (2) "the degree to which the subject matter is traditionally considered private rather than public," a determination in which "family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public"; and (3) "the nature and degree of the injury" that will be caused by revealing the information, which may include determining "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations therein."

Roberts v. Lederman, No. 04-CV-00033 (NGG), 2004 WL 2238564, at *7 (E.D.N.Y. Oct. 4, 2004) (quoting Amodeo II, 71 F.3d at 1050-51)). A "generalized concern of adverse publicity" is not, however, a sufficiently compelling reason to outweigh the presumption of access. Prescient Acquisition, 487 F.Supp.2d at 376. On the contrary, the party seeking to maintain redactions must make a sufficient showing of good cause to justify the sealing of portions of judicial documents. See Doe v. Greiner, 662 F.Supp.2d 355, 363 (S.D.N.Y. 2009).

Nycomed has made no such showing in this case. The entirety of Nycomed's "factual" showing as to the countervailing privacy interest of the individual named in Glenmark's proposed inequitable conduct allegations is contained in a single sentence in Nycomed's unsworn seven-page letter[8]: i.e., "There are important private interests in protecting his

---

[8] A substantial portion of Nycomed's January 8th letter consists of a renewed attack on
(continued…)

-16-

reputation against these types of accusations, as well as a clearly defined and serious injury to his reputation if the allegations are exposed." Nycomed 1/8/10 Letter at 4. Nycomed fails to "clearly define" this injury or to elaborate on its purported seriousness.[9]

This case bears no resemblance to those in which the privacy interests of individuals were held sufficient to overcome the presumption of access. The subject matter of the information is not one "traditionally considered private rather than public . . . ." Amodeo II, 71 F.3d at 1051. The judicial documents at issue do not disclose medical or psychological information about the named individual, nor do they pertain to a minor child. Contrast Roberts, 2004 WL 2238564, at *7 ("[T]he nature of much of the information in question is traditionally private as it involves illness and private conduct between" dying Beatle George Harrison and his physician); Doe v. Apfel, No. 98-CV-182 (JG), 1999 WL 182669, at *3 (E.D.N.Y. March 22, 1999) ("Almost every document in the record contains a lengthy, detailed and potentially embarrassing description of the illnesses from which Doe suffers.

---

[8](…continued)
Glenmark's inequitable conduct allegations. See Nycomed 1/8/10 Letter at 3 n.1, 5-6. Nycomed did not seek authorization to supplement its submissions on an issue that was fully submitted and argued months ago. Unfortunately, this has become an all-too-familiar practice on Nycomed's part: under the guise of addressing a new dispute, Nycomed revisits an earlier issue, thereby circumventing the Court's rules regarding the number and length of submissions for each motion. In order to deter this practice in the future, the Court will disregard footnote 1 and pages 5 to 6 of Nycomed's January 8th letter in ruling on Glenmark's motion to amend.

[9] During oral argument on the parties' cross-motions to amend their pleadings, counsel for Nycomed sought to justify the sealing of allegations of inequitable conduct by arguing that "when [] inequitable conduct charges are thrown around will-nilly[,] [s]tock prices can change, it can devastate companies . . . ." See 12/4/09 Tr. at 14, D.E. #213. As Nycomed is not now seeking to seal the allegations themselves, but only the name of the individual alleged to have been involved, this rationale no longer applies.

These illnesses do not have any significant public ramifications."); P.M. v. Evans-Brant Cent. Sch. Dist., No. 08-CV-168A, 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008) ("Congress and the Judicial Conference have recognized the privacy interests of minor children and directed that court filings . . . . utilize initials to reference an individual known to be a minor. *See* Fed. R. Civ. P. 5.2(a) . . . . The sensitivity of such information [contained in the administrative record pertaining to a student's special education placement] is recognized by 20 U.S.C. § 1417(c), which requires state and local educational agencies to ensure the confidentiality of any personally identifiable data, information, and records collected or maintained by such agencies.") Nor does the instant case involve "bank account numbers, social security numbers and information the disclosure of which could raise a personal safety issue . . . ." Prescient Acquisition, 487 F.Supp.2d at 377. While the individual named in Glenmark's filings is not a party to this litigation, his situation is not akin to the "innocent third parties" whose telephone conversations were electronically intercepted and, absent redaction, "whose intimate relations may thereby be disclosed . . . ." In re Newsday, 895 F.2d at 79; see In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

The Court has also considered whether the individual in question will have a "fair opportunity . . . to respond to [the] accusations" contained in Glenmark's proposed pleading and related documents. Amodeo II, 71 F.3d at 1051. Significantly, though not a named party, he is no stranger to this litigation. Rather, the record reflects that he is actively involved in the

action as Nycomed's liaison with trial counsel.[10] Furthermore, Nycomed's interest in responding to and defeating Glenmark's allegations of inequitable conduct is consonant with, and at least as strong as, the individual's interest in doing so. Therefore, through Nycomed, he has and will have ample opportunity to respond to those accusations.

Finally, Nycomed has not cited a single case in which, since Exergen, the name of the "who" alleged to be involved in inequitable conduct has been redacted from judicial documents. In fact, the Court's own research has revealed that the identities of such individuals have repeatedly been disclosed in reported decisions. See, e.g., Pall Corp. v. Cuno Inc., ___ F.Supp.2d __, 2010 WL 301954, at *3-4 (E.D.N.Y. Jan. 20, 2010); Civix-DDI, LLC v. Hotels.com, L.P., No. 05 C 2010 WL 431467, at *4-12 (N.D. Ill. Feb. 1, 2010).

Simply put, the information that Nycomed seeks to redact is not the kind that has traditionally been viewed as private. For all of these reasons, nothing in the record supports the conclusion that the privacy interest of the individual named in Glenmark's allegations of inequitable conduct outweighs the common law presumption of access. Therefore, the Court denies Nycomed's request to maintain those redactions.

## CONCLUSION

For the foregoing reasons, this Court rules that Docket Entry numbers 143, 144, 145, 146, 147, 152, 169, 190 and 213 should be unsealed in their entirety.

---

[10] In order to preserve the confidentiality of his identity pending any objection by Nycomed to this ruling, the Court has refrained from citing those portions of the record that disclose his involvement in the case.

Any objections to the in the rulings contained in this Memorandum and Order must be filed with the Honorable Carol B. Amon on or before **March 22, 2010**. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

The Clerk is directed to enter this Memorandum and Order into the ECF system.

**SO ORDERED.**

Dated: Brooklyn, New York
March 8, 2010

                                            **ROANNE L. MANN**
                                            **UNITED STATES MAGISTRATE JUDGE**