**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NYCOMED US INC.,

               Plaintiff,

       v.

GLENMARK GENERICS LTD., and
GLENMARK GENERICS INC., USA

             Defendants.

Civ. Action No. 08-5023 (CBA, RLM)

**PLAINTIFF NYCOMED'S OBJECTIONS**
**TO THE MAGISTRATE JUDGE'S MARCH 26, 2010 MEMORANDUM AND ORDER**
**GRANTING GLENMARK'S MOTION TO AMEND ITS ANSWER AND**
**COUNTERCLAIMS**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     FACTS .........................................................................................................................3

        A.      The Elements For Inequitable Conduct Were Not Adequately Pled ......................3

        B.      The Timing Of Glenmark's Motion To Amend Compels Denial Of Its
                Motion.................................................................................................................5

        C.      Glenmark Was Not Diligent And Sought To Prejudice Nycomed .........................6

        D.      The Prejudice To Nycomed Is Profound ................................................................8

        E.      The Consideration Of The Motion Was Not Adequate ..........................................9

III.    ARGUMENT ...............................................................................................................10

        A.      Glenmark's Claim Is Futile.................................................................................10

        B.      Glenmark's Claim Was Too Late ........................................................................13

        C.      Nycomed Will Be Unduly Prejudiced .................................................................15

IV.     CONCLUSION.............................................................................................................16

KL3 2771147.1

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. ___, 129 S.Ct. 1937 (2009) ...................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................11

*Burlington Industrial Inc. v. Dayco Corp.*,
  849 F.2d 1418 (Fed. Cir. 1988) ..........................................................................10

*Computer Acceleration Corp. v. Microsoft Corp.*,
  No. 9:06-CV-140, 2007 WL 2315223 (E.D. Tex. Aug. 10, 2007) ........................15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ................................................................ passim

*Hampton Bays Connection, Inc. v. Duffy*,
  212 F.R.D. 119 (E.D.N.Y. 2003) ........................................................................16

*Kassner v. 2nd Avenue Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ...............................................................................13

*Kingsdown Medical Consultants v. Hollister Inc.*,
  863 F.2d 867 (Fed. Cir. 1988) ......................................................................10, 11

*Monahan v. New York City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000), ..........................................................................15, 16

*Oppenheimer & Co., Inc. v. Metal Mgmt., Inc.*,
  No. 08 Civ. 3697 (LTS) (FM), 2009 WL 2432729 (S.D.N.Y. Jul. 31, 2009) ........14

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) ..........................................................................13, 15

*Pelican Prods., Inc. v. Plano Molding Co.*,
  No. 08 CV 2383 PSG (PLAx), 2009 WL 1279344 (C.D. Cal. May 6, 2009).  ...................14

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block*,
  608 F.2d 28 (2d Cir. 1979) .................................................................................16

KL3 2771147.1

**TABLE OF AUTHORITIES**
(Continued)

**STATUTES**

Fed. R. Civ. P. 9(b) .................................................................................................11

Fed. R. Civ. P. 12(b)(6) ..........................................................................................12

Fed. R. Civ. P. 16(b) ...............................................................................................13

Fed. R. Civ. P. 30(b)(6) ............................................................................................6

Fed. R. Civ. P. 56 ....................................................................................................12

Fed. R. Civ. P. 72 ..............................................................................................1 n.1

KL3 2771147.1

## I.       <u>INTRODUCTION</u>

Plaintiff Nycomed US Inc. ("Nycomed") respectfully submits these objections to the

Magistrate Judge's March 26, 2010 Memorandum And Order (D.E. 263, "Order") concerning

the motion by Defendants Glenmark Generics Ltd. and Glenmark Generics Inc., USA

(collectively "Glenmark") to amend their answer and counterclaims in order to submit a second

inequitable conduct claim.  The Order's findings regarding the amended pleadings were clearly

erroneous because the Order failed to recognize that a plausible claim for inequitable conduct

had <u>not</u> been made.  The Order is also contrary to law because it incorrectly applied the law of

pleading in general and inequitable conduct in particular.  Glenmark's second claim for

inequitable conduct does not present a plausible claim for inequitable conduct, a claim that

indisputably must be pled with the specific particularity required by the Court of Appeals for the

Federal Circuit.  The claim is also belated without valid excuse and is highly prejudicial and

disruptive to the resolution of this action.  Glenmark did not file its amendment with this claim

until this week, on April 5, 2010 (DE 271).[1]

Glenmark's claim lacks a sufficient factual predicate to proceed further.  Glenmark's

discovery is over in this action.  It will never have more facts than it has now.  Yet for the critical

element of deceptive intent, Glenmark has no plausible basis for its allegations.  Glenmark

makes its assertions "upon information and belief" and then asserts a formula for the legal

conclusion of deceptive intent.  (Glenmark Counterclaim, ¶¶ 66, 67, 72, 152, DE 271).  Such

inappropriate and baseless use of the "upon information and belief" mantra and formulaic legal

conclusions are entitled to no weight and thus the claim fails.

---

[1] Before Glenmark filed its amendment, Nycomed believed it had been abandoned because
Glenmark had missed, without comment or motion, the March 30 deadline set by the Order.
Although Fed. R. Civ. P. 72 sets the due date for these objections at 14 days, the Order only
permitted 10 days to file objections.  (DE 263).  Therefore, this paper is timely under both Rule
72 and the Order.

Pleading "upon information and belief" is permitted under Rule 9(b) when essential information lies uniquely within another party's control. But here, when fact discovery is *over* and Glenmark will never get more facts than it has now, the information is in Glenmark's hands. And the mantra can only be applied if the pleading sets forth the specific facts upon which the belief is reasonably based. Glenmark never set forth these specific facts because they do not exist.

Similarly, for the element of knowledge and access that underpin an inference or finding of deceptive intent, Glenmark has no plausible basis for its assertions. Glenmark again rests its assertions "upon information and belief" and then asserts a formula for a legal conclusion of knowledge and access. (*Id.* at ¶¶ 63, 69). These assertions are entitled to no weight. The Order imagines that Mr. Anderson's supervising authority and responsibilities as alleged by Glenmark (*id.* at ¶¶ 58, 59, 60, 69) may apply. But these allegations do not provide a plausible basis to allege actual access to, let alone knowledge of, the material information. Imputing this executive with knowledge of and access to these allegations is akin to imputing knowledge and access to a mayor for everything a policeman does on his beat. And Glenmark never tied these allegations together anyway.

These issues were presented and decided in a truncated proceeding that surprised both parties. The proceeding was based on the parties' pre-motion letters to the Court seeking a pre-motion conference, and not full and adequate briefing. Thus, the Order permits Glenmark to make a very belated sea change in the nature of this action, after it was nearly complete, with little to no justification, which will further knock this case off track. A new order should issue that denies Glenmark's amendment and puts this case back on track for resolution.

## II.   FACTS

### A.   The Elements For Inequitable Conduct Were Not Adequately Pled

The Order incorrectly finds that Glenmark has met the inequitable conduct pleading standard set forth in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). The Court in *Exergen* held that "Rule 9(b) requires identification of the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.  It must also be possible to reasonably infer from the pleadings that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.  *Id.* at 1327-28.

Conspicuously absent from Glenmark's claim is any pleading (because there is no basis) of deceptive intent, knowledge or access.  Specifically, there is no plausible factual assertion that:  a) Mr. Anderson intended to deceive or mislead the Patent Office, b) Mr. Anderson knew of the specific results of FPLA 1001, c) Mr. Anderson knew at any time of the relevance of FPLA 1001 results to the '669 Patent, d) Mr. Anderson knew what was at issue and what was being argued to the Patent Office, e) Mr. Anderson knew at any time of the relevance of the FPLA 1001 results to any arguments made to the Patent Office, and f) Mr. Anderson knew that false information was provided to the Patent Office.  In other words, Glenmark has not pleaded anything to "plausibly suggest any 'deliberate decision to withhold a known material reference' or to make knowingly false misrepresentation – a necessary predicate for inferring deceptive intent." *Id.* at 1331.

In fact, Glenmark does not name any specific individual when attempting to plead the "intent to deceive" element of inequitable conduct (Glenmark Counterclaim, ¶¶ 66, 67, 72, 152, DE 271).  Thus, Glenmark "fails to name the specific individual associated with the filing or

prosecution of the application issuing as the ['669] patent, who both knew of the material information and deliberately withheld or misrepresented it. [Glenmark's] pleading thus fails to identify the "who' of the material omissions and misrepresentation." *Exergen*, 575 F.3d at 1329. There is no way to connect up the allegations to make a plausible claim that the persons who made the allegedly false statements or omissions also knew of contradictory information and that they intended to deceive the Patent Office by withholding or misrepresenting the information. The allegations cannot be linked together to make a viable claim.

Glenmark has already collected all the facts it is entitled to on this issue. The most Glenmark does is to argue that Mr. Anderson's lack of knowledge and access is "not credible" or "not believable." (Glenmark letter, p. 2, footnote 1, DE 190). The *Exergen* Court specifically rejected this kind of assumption, holding that "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen*, 575 F.3d at 1330. Indeed, Mr. Anderson testified that he did not know where the data from the '669 patent came from (Exh. G to DE 194, p. 238, lines 8-14), that he still does not know where the '669 patent data came from (*Id.* at p. 160, lines 7-16), that he oversaw between five to six pallets of documents during this due diligence period (*Id.* at p. 255, line 20-22), and that he would have focused in any event on Phase III studies, not Phase I studies such as the FPLA 1001 (*Id.* at p. 182, line 22 – p. 183, line 20). Thus, as this case is long past the pleading stage, whether the standard is the "single most reasonable inference able to be drawn from the evidence," or "plausibility," Mr. Anderson did not know the FPLA 1001 results, did not know the information among the millions of pages involved and how the information may or may not be related to the '669 patent and the representations made to the Patent Office by Nycomed's outside counsel, and did not know the issues and arguments before the Patent Office,

4

further confirming the futility of Glenmark's claim and why it should not be permitted.  *Exergen*, 575 F.3d at 1329 n.5.

Glenmark also never obtained testimony linking any clinical study to the patent and never asked the persons who drafted the allegedly false statements (i.e., the inventors or the prosecution attorneys) for the basis of their statements.

**B.**     **The Timing Of Glenmark's Motion To Amend Compels Denial Of Its Motion**

At the behest of Glenmark, and over the objection of Nycomed, this action was given a very short – way too short – schedule for fact discovery given its complexity (DE 30). Nycomed, as the Plaintiff, has lived by, but been significantly prejudiced by, this schedule. Nycomed contended that there was not enough time to collect and produce the electronic and paper documents that were called for by the issues in the case.  Electronic discovery from an entity such as Glenmark, with facilities in the United States and several facilities in India, could not be done in the time allotted.  And it wasn't.  Glenmark first produced only 17,000 pages of documents, claiming that was all it had in response to a motion to compel.  Nycomed filed several additional motions to compel, and then Glenmark found 50,000 more pages of documents to produce, confirming Nycomed's positions.  Glenmark produced them well after the deadline for producing documents and just before and during the last period of time in which Nycomed could take depositions (DE 30).[2]  Motions to compel also had to be brought to obtain request for admissions and interrogatory responses and even depositions.  Glenmark successfully held up discovery at every opportunity it could find.  At the close of fact discovery, Glenmark still never produced all that was required, never performing a competent search for electronic

---

[2] All documents were to be produced by June 2, 2009 (DE 73).  Fact discovery was closed on August 17, 2009 (DE 30).  Claim construction was supposed to be over on September 14, 2009 (DE 30) and a *Markman* hearing held shortly afterwards.

documents and withholding key clinical study documents and patent applications that contradict Glenmark's positions taken in this action.  The Order permits Nycomed to obtain more discovery, but not to support Nycomed's claims, only to develop a defense to a claim that should never have been brought in the first place.

Despite the unfairness and prejudice from the schedule and Glenmark's withholding of discovery, Nycomed took depositions and complied with the schedule.  The Court made it clear that extensions of time would not be granted and they were not.  When applying case law to the facts here, it should be recognized that this is not a case from the past where years were spent in discovery.  Just a few months were permitted.  It would be manifestly unfair to now permit Glenmark to throw the schedule into further disarray at its will after it has prejudiced Nycomed in such a material manner.

**C.**     **Glenmark Was Not Diligent And Sought To Prejudice Nycomed**

Glenmark's original counterclaim, submitted on January 12, 2009 and again on July 24, 2009, asserted a first inequitable conduct defense that it has now agreed to drop with prejudice. (DE 10, DE 108).

There can be no question that the relief Glenmark seeks in submitting a second inequitable conduct defense is extremely belated, especially given the very truncated schedule it sought and obtained.  Glenmark claims that it formulated this second inequitable conduct position as early as July 17, 2009, during the fact discovery period, and more than four months before its letter motion, after the parties had already moved on to claim construction and expert discovery.  (Exh. G to Glenmark letter, DE 190).  Glenmark also stated at that time that it intended "to explore this issue at the depositions of Messrs Woessner, Anderson, GSK and Dow, as well as the 30(b)(6) witness."  (*Id.*).  Glenmark completed the depositions of Mr. Anderson (both individually and under Rule 30(b)(6)) on July 24 and Mr. Woessner on August 12 (Exh. A,

B, E (Topics 1, 2, 7; Anderson Depo., pp. 21-22) to Glenmark letter, DE 190).  Glenmark further

noticed Dow and GSK depositions for July 29 and 31 respectively (Exh. C and D to Glenmark

letter, DE 190) yet decided to forego these depositions.  Fact discovery closed on August 17,

2009.  (DE 30, DE 73).  In light of these opportunities to obtain discovery, there is no possible

excuse for Glenmark's delay in seeking to amend its pleadings for a second time more than three

months after it completed the discovery that it claimed it needed.

Glenmark attempted to justify this delay by relying on the Court's October 20, 2009

denial of Glenmark's motion to compel interrogatories.  This argument made no sense.  The

Order (DE 263) states that this reason "cannot be characterized as compelling."  Order, p. 22.

Glenmark is essentially arguing that it waited all this time because it did not have sufficient

discovery to support the counterclaim (discovery which the Court correctly denied).  However, if

this is the case, Glenmark cannot possibly have any good faith basis in asserting this claim.

Moreover, the Court found that Glenmark had and "indeed used the opportunity to explore these

issues during the course of fact discovery" and that Glenmark "has not challenged the sufficiency

of [Messrs Anderson and Woessner's] testimony."  (DE 185, p. 4).  Thus, Glenmark had no

reason to delay seeking to add this claim until now.

The Order attempts to justify Glenmark's delay by citing to cases under different

schedules and under different conditions.  Order, pp. 22-23.  Here, Glenmark fought for and

benefitted from a truncated schedule that did not fit the complexity of the case and greatly

prejudiced Nycomed.[3]  Extending the schedule now to further prejudice Nycomed and to aid

Glenmark, under these circumstances, does not make sense.

---

[3] The Order's statement that "Nycomed has exhibited no eagerness to accelerate the pace of the
proceedings" can only be referring to Nycomed's objections to the original scheduling order that
did not permit Glenmark to produce its documents in time.  In fact, Nycomed objected to the

D.     **The Prejudice To Nycomed Is Profound**

Glenmark argued that Nycomed will "suffer no prejudice."  That is incorrect.  As Glenmark has indicated, facts necessary to Nycomed's defense of such inequitable conduct allegations lie with third parties, such as GSK (the original applicants/owners of the '669 patent and the FPLA 1001 studies), Dow (one of the five original inventors of the '669 patent), the GSK attorneys who drafted the patent application, the FPLA 1001 investigators, the Patent Examiner, etc. Yet Nycomed did not have the opportunity to obtain such discovery because Glenmark never sought to add this claim during fact discovery and instead never pursued it. Specifically, Glenmark never included this second inequitable conduct claim in a pleading or interrogatory response; specifically failed to include this claim in its First Amended Answer (DE 108) (filed one week after Glenmark stated it intended to amend its answer with this claim); refused to keep Nycomed informed about the depositions of GSK and Dow after repeated requests (Exh. F to DE 194, highlighting added) and ultimately decided to forego them; failed to elicit any facts supporting this claim at the Byrom, Anderson and Woessner depositions (which is apparently why it sought the 30(b)(6) and interrogatory additional discovery that the Court denied); failed to follow up with a deposition of a single person who is alleged to have made a false statement or omission; and ultimately failed to raise this claim until months after the close of fact discovery.  As such, if Glenmark were permitted to add this new inequitable conduct claim, Nycomed would be highly prejudiced in that it did not have a fair opportunity to defend itself while Glenmark admittedly completed all of the discovery it said it needed.

Court's reference of the claim construction issues to a special master because it appears it will delay resolution of this action.  After Nycomed lost its plea for adequate time to obtain discovery from Glenmark, Nycomed has not sought further time in this action.  Any delay in this action in recent months was caused by Glenmark's failure to meet its discovery obligations.  Glenmark could have easily resolved all of the discovery issues that are being considered long ago by timely producing its documents and providing its witnesses for depositions.

KL3 2771147.1

The Court attempts to reduce some of the prejudice by granting Nycomed a very brief discovery period.  But what about the interrogatory responses, request for admissions, depositions, patent application documents, clinical study documents, and electronic discovery that Glenmark has withheld?  What about the deposition questions Nycomed was never able to ask concerning the withheld documents?  Why would discovery be extended to permit Glenmark's belated claim to proceed?  This limited extension cannot be justified from a case management and fairness perspective.

And the provision for discovery does nothing to reduce the prejudice from the delay and expense of taking this case off track from resolution.  Glenmark claims its product will be approved any day now.  Glenmark's amendment prejudices Nycomed profoundly and the Court's order does not reduce that prejudice.

The Order attempts to draw an analogy between the timing of Nycomed's motion to amend and the timing of Glenmark's motion.  Order, p. 22, n.16.  That analogy does not fit the facts.  There is no dispute that Nycomed filed its amendment the <u>same</u> day Glenmark made its production of the critical clinical study documents and the first of three withheld patent applications (the Nycomed amended pleading refers to just the first of the three applications because the other two were produced even later).  Glenmark alleges it had its claim in hand many months earlier during fact discovery and well before it amended its Counterclaims for the second time on July 24.

**E.     <u>The Consideration Of The Motion Was Not Adequate</u>**

The parties believed they were submitting introductory letters to the Court to seek permission to file formal motions.  No one imagined that their rights would be determined based on short, introductory letters or a pre-motion hearing addressed to seeking to submit a formal motion.  The Order was decided based upon an incomplete proceeding.

9

### III.   ARGUMENT

**A.   Glenmark's Claim Is Futile**

An inequitable conduct claim requires an accused infringer to show that an individual directly associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and that the individual did so with a specific intent to deceive the Patent Office.  *Exergen,* 575 F.3d at 1327, n.3.  A finding of inequitable conduct has severe consequences:  not only does it result in the death of the entire patent-in-suit (i.e., the patent can no longer be enforced), but it also impugns the reputations of those associated with the conduct. The Federal Circuit has long criticized the frequency of meritless inequitable conduct claims and has noted the damage to reputations that ensues from even just allegations of inequitable conduct.  For example, in *Burlington Indus. Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988), the Federal Circuit vented:

> [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague… [Accused infringers] get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself.  A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.

Over the years, the Federal Circuit has attempted to remedy this "plague" through certain decisions that demanded more stringency in both pleading and ultimately proving inequitable conduct claims.  *See, e.g.*, *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (significantly curtailing a district court's discretion to find inequitable conduct, requiring that "the involved conduct, viewed in light of all the evidence, including evidence

indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.") (citation omitted).

The recent *Exergen* case followed the principles underlying *Kingsdown* and other Federal Circuit precedent by attempting to ensure that inequitable conduct claims are asserted only when there is a solid factual basis.  Specifically, in *Exergen*, the Federal Circuit gave teeth to the already heightened Rule 9(b) pleading standard for inequitable conduct by holding the following:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.  Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328-29.  The "who" is necessary due to the unique nature of inequitable conduct, where the duty of candor in patent prosecution applies only to individuals not corporations, and thus the individuals violating that duty must be specifically identified.  *See id.* at 1329.

The Order does not use the correct law that applies to the Court's inquiry in ruling on the sufficiency of pleadings.  The Supreme Court recently clarified that the "plausibility" standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (e.g., "a formulaic recitation of the elements of a cause of action will not do") applies to all forms of civil actions. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009) (although the allegations set forth a possible claim, they did not set forth a plausible claim).  The Order does not mention these standards.

The Order also does not recognize that Glenmark's use of "information and belief" and formulaic legal conclusions are to no avail.  The Federal Circuit explained that:

11

> Deceptive intent in this case was pleaded solely on "inform[ation] and belie[f]." Answer ¶¶ 43, 46.  Pleading on "information and belief" is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based.  Here, SAAT's pleading provides neither the "information" on which it relies nor any plausible reasons for its "belief."   Moreover, the circumstances that SAAT has alleged, even if true, do not plausibly suggest any "deliberate decision to withhold a known material reference" or to make a knowingly false misrepresentation – a necessary predicate for inferring deceptive intent.

*Exergen,* at 1330-1331 (citations omitted).  Glenmark's pleadings are similarly defective for not supporting its assertions "upon information and belief."  If the rationale of the Order were adopted, and this type of formulaic, conclusory pleading excused, then an inequitable conduct claim would "devolve into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that art or information having some degree of materiality was not disclosed.'"  *Id.* (citations omitted).

Glenmark originally asserted one inequitable conduct claim against Nycomed, acknowledged that it was meritless, then conjured up a second inequitable conduct claim, abandoned the first meritless claim altogether, and asserted the second meritless claim far after the close of fact discovery without garnering any of the necessary support for it.  Glenmark's actions exemplify the very type of conduct that the Federal Circuit has repeatedly criticized, i.e., asserting frivolous inequitable conduct claims that needlessly damage reputations and give the claim its notoriety.

In fact, Glenmark's second inequitable conduct allegations would never be able to survive a Rule 12(b)(6) or Rule 56 motion – Glenmark has not satisfied the *Exergen* or Rule 9(b) pleading requirements:

• Glenmark never pleaded that any individual who allegedly made false statements did so with specific intent to deceive the PTO.  *See Exergen*, 575 F.3d at 1330 (requiring that

sufficient facts be alleged to create a reasonable inference of scienter, including both the knowledge of the withheld material information or falsity of the material representation, and specific intent to deceive the PTO).

• Glenmark never identified a single person by name who knew of withheld or false information or its alleged relevance and then who withheld this information with a specific intent to deceive the PTO. *See id.*

• Glenmark never made a plausible showing that the individual that it did name had knowledge of or access to withheld or false information or its alleged relevance, let alone a specific intent to deceive the PTO. *See id.*

• Glenmark never linked any statements in the prosecution of the patent with proofs that the statement was false.

• Glenmark never took any discovery of any individual alleged to have made a false statement or a person who actually knew of what are alleged to be inconsistent facts.

The Order failed to require Glenmark to provide the assertions mandated by the Federal Circuit.  Order, pp. 26-35.  The Federal Circuit has explicitly rejected the Order's type of analysis.

## B.      Glenmark's Claim Was Too Late

Glenmark's blasé attitude towards asserting inequitable conduct allegations is also evident from Glenmark's excessive delay in even asserting its second claim.  Glenmark was required to have provided good cause under Rule 16(b) for not pleading earlier.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  There should be no dispute that whether "good cause" exists turns primarily on the "diligence" of the moving party.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243, 244 (2nd Cir. 2007) (citing *Parker*, 204 F.3d at 339-340).  Although a court also may consider whether the amendment will prejudice the non-

moving party, the mere absence of prejudice is not sufficient to satisfy the good cause requirement of Rule 16(b).  *Oppenheimer & Co., Inc. v. Metal Mgmt., Inc.*, No. 08 Civ. 3697 (LTS) (FM), 2009 WL 2432072, at *2-3 (S.D.N.Y. Jul. 31, 2009).

The Order does not adequately address these concerns.  Glenmark did not and cannot show good cause.  Glenmark had every opportunity to obtain discovery, particularly since it had knowledge of its allegations well before discovery began (i.e., both the patent and NDA on which Glenmark bases its claims were in Glenmark's files and became part of its ANDA well before this suit was filed, DE 152, Ex. B).  Here, Glenmark did not seek to amend its pleadings on or near June 2, 2009 (the cut-off date for amending pleadings); or on or near July 17, 2009 (the date by which Glenmark claimed to have formulated the inequitable conduct allegations at issue); or on or near July 24, 2009 (when Glenmark filed its first amended answer and counterclaims and when Glenmark completed the deposition of the individual targeted in its proposed amended pleading); or on or near August 12, 2009 (when Glenmark completed the deposition of another individual with whom Glenmark stated that it intended to explore the alleged inequitable conduct issue); or on or near July 29 and 31, respectively (the dates for which Glenmark noticed the depositions of Dow and GlaxoSmithKline, depositions at which it previously had stated that it intended to explore the alleged inequitable conduct issue, but then canceled); or on or near August 17, 2009 (when fact discovery closed).   Instead, Glenmark inexplicably waited until November 13, 2009, almost three months after fact discovery closed to make a request for a pre-motion conference seeking leave to add its second inequitable conduct claim.

Even assuming that Glenmark's attempted justification for delaying filing its motion (i.e., the Court's October 20, 2009 denial of Glenmark's motion to compel interrogatories) is a valid

one (which it is not because it simply demonstrates that there is no proof of the allegations), Glenmark has offered no plausible explanation as to why it waited almost an additional month before seeking a pre-trial conference to file its motion. *See Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 2315223, at *2-3 (E.D. Tex. Aug. 10, 2007); *Pelican Prods., Inc. v. Plano Molding Co.*, No. 08 CV 2383 PSG (PLAx), 2009 WL 1279344, at *2-3 (C.D. Cal. May 6, 2009). There is also no evidence of good faith or lack of dilatory motive. Here, the facts instead lead to the conclusion that the pleadings were retaliatory given Nycomed's motion to amend and timed so that Nycomed could not take discovery from third parties to develop a rebuttal.

## C.      Nycomed Will Be Unduly Prejudiced

The cases the Court cited to support the proposition that Nycomed will not be prejudiced if Glenmark's motion to amend is granted are distinguishable and, in fact, support Nycomed's position. In *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000), plaintiffs asserted that they would be prejudiced if the court allowed the defendants to assert the affirmative defense of *res judicata* for the first time in a motion for summary judgment. The court in its discretion construed the motion as a motion to amend defendants' answer. The circumstances that led to the defendants' untimely assertion of the *res judicata* claim were due to "organizational snafu." *Id.* In essence, the defendants were late in asserting the claim due to "personnel changeover." *Id.* at 283. The cases were assigned to new lawyers who had not previously worked on the case. The new lawyers were unsure about their predecessors' actions. In the instant case, there was no "organizational snafu." Glenmark's current attorneys have represented Glenmark since the beginning of this case.

Further, in *Monahan*, the record showed that plaintiffs were aware of the information necessary to defend the claim at least "twelve months before defendants' motion for summary

judgment was filed . . ." *Id.* at 284.  Here, as shown above, the information that is necessary for Nycomed to defend itself is in the hands of third parties, some of whom have already complied with subpoenas.

In *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979), the Second Circuit reversed the district's court's denial of appellant's motion for leave to amend its complaint.  In reversing the district court, the Second Circuit noted that "[t]he record before us does not indicate how extensive the discovery . . ." was before appellant moved for leave to amend its complaint.  *Id.*  Unlike in *S.S. Silberblatt*, in this case, the record is clear.  Fact discovery closed on August 17, 2009.  All documents were to be produced by June 2, 2009.

In *Hampton Bays Connection, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003), plaintiff filed a motion to amend its Complaint to add an equal protection claim.  The court found that the amendment would not result in undue prejudice, noting that "repetitive depositions may not be necessary if the equal protection claim is re-asserted."  *Id.*  However, in this case, repetitive depositions and subpoenas of third parties will be necessary.  The depositions of Amy Byrom, Robert Anderson, Warren Woessner and all of the critical third parties (the five named inventors, GSK, etc.) may need to be retaken.  A second subpoena of the same third parties may also be successfully quashed with good reason.

## IV.    CONCLUSION

Glenmark's amendment is unduly belated and the facts show that it was made in bad faith with dilatory motive.  Glenmark waited until fact discovery was long over so that Nycomed could not fairly defend itself and to delay this action and make it overly expensive.  Moreover, Glenmark failed to meet the pleading requirements for such a claim.  For the above-stated

reasons, the Court should deny Glenmark's motion to amend as filed with no justification, untimely and as failing to adequately allege a claim for inequitable conduct.

Dated: April 9, 2009                         Respectfully submitted,

                                   By:   /s/Donald L. Rhoads
                                         Donald L. Rhoads, Esq.
                                         Nicholas L. Coch, Esq.
                                         **KRAMER LEVIN NAFTALIS &
                                         FRANKEL, LLP**
                                         1177 Avenue of the Americas
                                         New York, New York 10036
                                         Telephone:  (212) 715-9100
                                         Facsimile:  (212) 715-8000

17