UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NYCOMED US INC.,

                        **Plaintiff,**

        -against-

**GLENMARK GENERICS LTD., et al.,**

                        **Defendants.**
--------------------------------------------------------------x

**MEMORANDUM
AND ORDER**

**08-CV-5023 (CBA)(RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

     Discovery disputes in this action have been contentious, protracted, and excessively documented. Even well after the close of discovery, critical issues regarding document production remain unresolved -- most significantly, whether Glenmark's searches of its electronically stored information ("ESI") were conducted properly, and whether Glenmark unjustifiably withheld responsive electronic and paper documents. A resolution of these matters is long overdue, and the Court's patience for the parties' incessant finger-pointing is at an end.

     Having reviewed the extensive record and conducted an evidentiary hearing to examine the Glenmark employee responsible for overseeing Glenmark's ESI search and document production, the Court concludes that Glenmark failed to abide by its good-faith discovery obligations in two respects: (1) Glenmark withheld from discovery, without justification, clinical study reports from the PRACS Institute ("PRACS"), the clinical testing agent for Glenmark's Abbreviated New Drug Application ("ANDA") fluticasone lotion; and (2) Glenmark willfully failed to search two important and obvious repositories for responsive ESI, which contained Glenmark's U.S. provisional and utility patent applications. Glenmark's

failure to timely produce otherwise discoverable electronic information containing responsive search terms was inexcusable. Thus, for the reasons set forth below, the Court finds that discovery sanctions against Glenmark are warranted, and directs Glenmark to pay a $100,000 fine to plaintiff Nycomed and a $25,000 fine to the Clerk of the Court.

## BACKGROUND

More than a year ago, after the June 5, 2009 deadline for document production, <u>see</u> Order (May 19, 2009), ECF Docket Entry ("D.E.") #73, Nycomed first challenged the adequacy of Glenmark's ESI searches, complaining that the number of responsive documents was "incredibly small" and that Glenmark had failed to produce metadata and the "hit list" of documents yielded by its keyword searches. <u>See</u> Motion to Compel Proper ESI Search (July 2, 2009), D.E. #93. The undersigned magistrate judge granted in part Nycomed's request for relief, directing Glenmark to provide "custodian" and "keyword" metadata for documents it had produced, as well as the hit list containing the results of its ESI searches. <u>See</u> Memorandum and Order (July 13, 2009), D.E. #101.

Despite this relief, Nycomed's concerns regarding the adequacy of Glenmark's ESI searches persisted beyond the close of fact discovery on August 17, 2009, <u>see</u> Order (Feb. 17, 2009), D.E. #30-1, and, on September 19, 2009, Nycomed sought to strike those portions of Glenmark's filings -- including its claim construction positions, defenses, and counterclaims -- that related to patent applications that Nycomed argued should have been provided during the ESI search process, but instead were produced after discovery had closed. <u>See</u> Motion to Strike (Sept. 18, 2009) ("9/18/09 Pl. Letter") at 2, 3, D.E. #145; Memorandum in Support (Sept. 29, 2009), D.E. #171. The Court denied the extraordinary relief that Nycomed sought,

and instead reopened discovery for the limited purpose of permitting the telephonic deposition of one of Glenmark's formulators concerning the contents of Glenmark's belatedly produced utility and provisional patent applications. <u>See</u> Memorandum and Order (Nov. 12, 2009) ("11/12/09 M&O") at 7–8, D.E. #189.

Nycomed objected to the Court's ruling and filed a motion for reconsideration of that portion of the order denying its motion to strike. <u>See</u> Memorandum in Support of Motion for Reconsideration (Nov. 27, 2009) ("11/27/09 Pl. Mem."), D.E. #203-1. Nycomed reiterated its concerns that Glenmark had not properly conducted its ESI searches, <u>see</u> <u>id</u>. at 15, 16, and Glenmark again denied the allegations as untrue. <u>See</u> Response in Opposition (Dec. 4, 2009) at 8, D.E. #205. At a hearing on the matter on December 17, 2009, the Court once again denied Nycomed's request to strike Glenmark's pleadings, but held that Nycomed was "entitled to some limited discovery concerning the patent applications which were not produced during the discovery period." Transcript of Oral Argument on December 17, 2009 ("12/17/09 Tr.") at 73, D.E. #211.

Not to be outdone, Glenmark filed its own motion for reconsideration of the Court's ruling, and requested clarification of the nature of any additional discovery ordered by the Court, to the extent that such discovery went beyond what was necessary to authenticate Glenmark's belatedly produced patent applications for purposes of admissibility. <u>See</u> Motion for Reconsideration (Jan. 4, 2010) at 12, D.E. #214-1. More filings and accusations from both sides followed, including Nycomed's renewed assertions that a series of email threads obtained from a third-party clinical testing agent, PRACS, constituted "unequivocal proof" that Glenmark had not conducted proper ESI searches and was withholding critical information.

<u>See</u> Letter Concerning Glenmark Reply (Jan. 27, 2010) at 1–2, D.E. #221.

The Court remained troubled by the tone and volume of filings on the issue, and grew uncertain as to the adequacy of Glenmark's ESI production. During a joint conference with a related case brought by Nycomed against Perrigo Pharmaceuticals,[1] the Court, at Glenmark's suggestion, directed Glenmark to make a "factual showing," through someone with personal knowledge of the process, regarding the adequacy of Glenmark's ESI search. <u>See</u> Transcript of Civil Conference on February 3, 2010 ("2/3/10 Tr.") at 58–59, D.E. #233. Glenmark's response to that directive -- and both parties' additional filings addressing that response[2] -- failed to allay the Court's concerns as to why certain documents had not been timely produced.

On May 27, 2010, "[i]n an effort to finally resolve Nycomed's challenges to the adequacy of Glenmark's document production[,]" the Court scheduled an evidentiary hearing for June 2, 2010, and directed Glenmark to produce as a witness Dr. Vijay Soni, the Executive Vice President of IP for Glenmark Generics, Inc., USA, and the Glenmark employee responsible for overseeing its searches. <u>See</u> Order (May 27, 2010), D.E. #322. Dr. Soni appeared on the scheduled date, and was examined by the Court and by counsel. <u>See generally</u> Transcript of Evidentiary Hearing on June 2, 2010 ("6/2/10 Tr."), D.E. #351. Dr. Soni's testimony shed considerable light on the deficiencies in Glenmark's ESI searches, and confirmed that additional relief in the form of sanctions is appropriate to remedy what this Court now considers Glenmark's willful dereliction of its discovery duties.

---

[1] <u>Nycomed U.S. Inc. v. Perrigo Israel Pharmaceuticals, Ltd., et al.</u>, 09-CV- 5123 (CBA)(RLM).

[2] <u>See</u> record citations <i>infra</i> pp. 9–17.

## DISCUSSION

### I.  Applicable Legal Standards

The Federal Rules of Civil Procedure authorize a party to serve on any other party a request to produce electronically stored information in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a).  A party that has been served with a request for ESI is charged with "find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld." Merck Eprova AG v. Gnosis S.P.A., No. 07 Civ. 5898 (RJS), 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010).  This obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together "to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents." Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate, even where the misconduct involves late disclosure, as opposed to spoliation.  See Phoenix Four, Inc. v. Strategic Res. Corp., No. 05 Civ. 4837, 2006 WL 1409413, at *5–6, *9 (S.D.N.Y. May 23, 2006).[3]  The predicate for such sanctions is Rule 37

---

[3]   Pursuant to Rule 26(g)(1), which requires that counsel sign every discovery response, counsel's signature constitutes a certification that, "to the best of the signer's knowledge, information, and belief," the response is consistent with the rules of discovery and not interposed for any improper purpose. Fed. R. Civ. P. 26(g)(1).  Certifications made "without substantial justification" are subject to "an appropriate sanction" on the certifying attorney, the

(continued...)

of the Federal Rules of Civil Procedure and/or the Court's inherent authority to manage its own affairs.  See 11/12/09 M&O at 3, D.E. #189 (citing Fed. R. Civ. P. 37(c)(1)); Phoenix Four, 2006 WL 1409413, at *3; see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.") (citing DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135–36 (2d Cir. 1998)).  Discovery sanctions serve three purposes: they (1) ensure that a violating party does not benefit from its own failure to comply with discovery; (2) serve as a specific deterrent to achieve compliance with the particular discovery order at issue; and (3) serve as a general deterrent in the case at hand and in other litigation, provided that the party against whom sanctions are imposed was in some sense at fault.  See In re Durand, No. 07-CV-5037 (JFB), 2008 WL 4282601, at *5 (E.D.N.Y. Sept. 16, 2008); see also Gutman v. Klein, No. 03CV1570 (BMC)(RML), 2008 WL 4682208, at *11 (E.D.N.Y. Oct. 15, 2008); Klezmer v. Buynak, 227 F.R.D. 43, 51 (E.D.N.Y. 2005).

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."  Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999); accord Gutman, 2008 WL 4682208, at *11; Klezmer, 227 F.R.D. at 51; see Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006).  Rule 37 lists a menu of possible remedies, the most severe of which include "directing that . . . designated facts [in the discovery order] be taken as established for purposes of the

---

[3](…continued)
client, or both.  Fed. R. Civ. P. 26(g)(3).

action, as the prevailing party claims," to "striking pleadings in whole or in part," or even

"dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(i) –

(vi). A court may also levy monetary sanctions against a violating party in lieu of or in

addition to the sanctions outlined in Rule 37(b)(2)(A). See, e.g., Merck Eprova, 2010 WL

1631519, at *6. Where a party seeks sanctions for the responding party's failure to produce

requested documents, the Court "may order payment of the reasonable expenses, including

attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c). The imposition of an adverse

inference is another potential sanction for discovery abuses. See, e.g., Residential Funding,

306 F.3d at 107-10. For less severe sanctions, such as fines and cost-shifting, the Court's

inquiry focuses mainly on the misconduct of the responding party; for more severe sanctions,

such as dismissal, preclusion or the imposition of an adverse inference, the Court must also

assess whether the requesting party suffered prejudice as a result of the loss or withholding of

evidence. See Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Secs.,

LLC, 685 F.Supp.2d 456, 467 (S.D.N.Y. 2010); accord Merck Eprova, 2010 WL 1631519, at

*4.

In previously exercising its discretion, the Court declined to adopt the more draconian

measures sought by Nycomed -- to wit, the striking of Glenmark's pleadings and its claim

construction positions and briefs. See generally 11/12/09 M&O, D.E. #189. Since that time,

the record has been expanded, casting new light on Glenmark's discovery misconduct. To

determine whether sanctions or other relief are warranted in view of the new information and

evidence, the Court applies the same legal framework as before and thus considers factors such

as: (1) the explanation for the failure to disclose; (2) the importance of the withheld evidence;

(3) the prejudice suffered by the opposing party absent severe sanctions; and (4) the possibility

of a continuance. See id. at 4 (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir.

2006); Softel, Inc. v. Drafon Med. & Scientific Comm'cns, Inc., 118 F.3d 955, 961 (2d Cir.

1997); Design Strategy, 469 F.3d at 296). A showing of bad faith on the part of the offending

party is not required under Rule 37. Design Strategy, 469 F.3d at 296.

## II. Glenmark's Sanctionable Discovery Misconduct

### A. Glenmark Unjustifiably Withheld the PRACS Clinical Study Reports

Glenmark did not timely produce all of the PRACS clinical study reports in its

possession until at least September 11, 2009 -- about three months after the deadline for the

parties to produce responsive ESI. See Letter in Response (Feb. 17, 2010) ("2/17/10 Pl.

Letter") at 1, D.E. #235.[4] It also failed to produce a series of fourteen email threads between

Dr. Rajesh Karwa (a Glenmark employee) and PRACS personnel that were subsequently

located in a corrupted email storage file on Dr. Karwa's laptop computer. These documents

relate to bioequivalence clinical studies concerning the vasoconstrictive properties of

Glenmark's proposed product. Both parties have disputed the importance and volume of the

belatedly produced PRACS documents,[5] and the adequacy of Glenmark's explanation for

---

[4]  Nycomed contends that even Glenmark's production of PRACS documents on September 11,
2009 was incomplete. See Letter Concerning Glenmark Reply (Jan. 27, 2010) at 2, D.E.
#221.

[5]  Nycomed asserts that the PRACS clinical study reports are "highly relevant" to the issue of
infringement, in that Glenmark has argued that its fluticasone lotion does not infringe the
patent-in-suit because "there is no evidence that its proposed product will have the clinical
results of the second wherein clause of the claims ('wherein the lotion causes more
vasoconstriction')." 11/27/09 Pl. Mem. at 8, D.E. #203-1. Nycomed additionally maintains

(continued…)

failing to produce them.

As an initial matter, this Court rejected Glenmark's relevance objections more than a year ago, concluding that "[clinical biostudies] concerning the vasoconstrictive properties of Glenmark's proposed product are sufficiently relevant to be discoverable." Memorandum and Order (July 30, 2009) ("7/30/09 M&O"), at 3, D.E. #112. Unbeknownst to the Court, shortly before this ruling, Glenmark -- anticipating the Court's decision and knowing that Nycomed had served a third-party subpoena on PRACS -- furnished Nycomed with some, but not all, of the PRACS clinical study documents. See Letter in Response (May 3, 2010) ("5/3/10 Def. Letter") at 2, D.E. #298. Glenmark then supplemented this already-belated production with a handful of additional documents on September 11, 2009. See id.

Nycomed assails Glenmark's withholding of the PRACS clinical study reports, correctly noting that the documents contain responsive ESI search terms. See 2/17/10 Pl. Letter at 1, D.E. #235. Nycomed similarly argues that the emails to and from Dr. Karwa likewise contain responsive ESI, and thus should have been located and produced had Glenmark properly searched its Microsoft Exchange server and journaling system. Id.[6]

[5](...continued)
that Glenmark's biostudies were conducted improperly. See id. Glenmark contends that the clinical biostudies are not relevant to the litigation in that they relate only to FDA approval of Glenmark's ANDA application. See Response in Opposition (June 10, 2009) at 2, D.E. #86.

[6] Glenmark described five types of systems on which it currently maintains its ESI: "(a) laptop hard drives for those employees who have a laptop; (b) the Microsoft Exchange email server, located in Mumbai, India; (c) the file exchange servers, which are located at each Glenmark facility; (d) the backup tapes, which are rewritten every thirty (30) days; and (e) the journaling system, located in Mumbai, India." Declaration of Vijay Soni, Ph.D. Concerning ESI (Feb. 11, 2010) ("2/11/10 Soni Decl.") ¶ 5, D.E. #230. Prior to February 2009, Glenmark had a decentralized setup of five Microsoft Exchange mail servers, four of which

(continued...)

Glenmark acknowledges that all of the clinical study reports "were located during Glenmark's first search of its ESI and paper documents," Letter in Response (May 3, 2010) ("5/3/10 Def. Letter") at 2–3 D.E. #298, but counters that it was "under no obligation to re-produce exact duplicates [of the PRACS clinical study reports] . . . it knew Nycomed already had." Letter in Response (Feb. 25, 2010) ("2/25/10 Def. Letter"), at 2, D.E. #242. Glenmark additionally asserts that the email correspondence between PRACS and Dr. Karwa had not been produced because copies were stored only on Dr. Karwa's laptop in a ".pst" file that was corrupted and unsearchable. See id. at 3. Both parties have provided the Court with affidavits of purported "experts" in ESI to support their respective positions. See Declaration of Mark D. Gianturco, D.E. #260; Declaration of James Berriman, D.E. #243.

According to Mahendra Sekharan, the Glenmark employee responsible for physically conducting these searches, PRACS clinical study documents were collected in paper and electronic form during Glenmark's ESI searches in April and July 2009. See Declaration of Mahendra Sekharan Concerning Glenmark's Biostudy Documents (May 3, 2010) ¶ 2, D.E. #299. Consequently, Glenmark's only excuse for its late production of the clinical study reports is an *ex post facto* one: Glenmark reasons that after Nycomed had independently obtained documents from PRACS, there was no need to provide copies of the reports because, in Glenmark's view, such production would be unnecessarily redundant. See 2/25/10 Def. Letter at 2, D.E. #242. The Court finds this explanation woefully inadequate. Nor was it

[6](…continued)
were located in India and one in Mahwah, New Jersey. See Declaration of Mahendra Sekharan (Feb. 25, 2010) ¶ 5, D.E. #241.

proper for Glenmark to withhold the reports simply because they were "hundreds of pages long." Id. In fact, once the Court ruled in July 2009 that such documents were discoverable, there should have been no question that Glenmark was obligated to immediately produce all of the PRACS documents that it located during its April and July 2009 ESI searches. Glenmark's failure to do so -- evidenced by its tardy production in September -- violated Glenmark's obligation to timely provide responsive discovery, and its belated production does not retrospectively excuse this violation. See RBS Holdings, Inc. v. Gordon & Ferguson, Inc., No. 06 Civ. 6404(HB)(KNF), 2007 WL 1610211, at *2-3 (S.D.N.Y. June 4, 2007).

With respect to the PRACS emails, Glenmark has provided a plausible explanation for its failure to produce them. During the evidentiary hearing on June 2, 2010, Dr. Soni, who oversaw Glenmark's collection of ESI and paper discovery, described how Dr. Karwa moved several of his emails to a .pst file once he had reached the limit for emails in his inbox. See 6/2/10 Tr. at 6-7, 88–89, D.E. #351; 2/11/10 Soni Decl. ¶¶ 2, 23-26, D.E. #230. This .pst file contained Karwa's only copies of the PRACS emails stored on Glenmark's ESI systems, see 2/11/10 Soni Decl. ¶¶ 21–23; Karwa's copies were not stored on Glenmark's Microsoft Exchange Server or in its journaling system, see Supplemental Declaration of Vijay Soni, Ph.D. (Feb. 25, 2010) ("2/25/10 Soni Decl.") ¶ 9, D.E. #240, and the emails had not been copied to any other Glenmark employee designated as a custodian of ESI. See Exhibit 6 (filed under seal) to Declaration of Donald Rhoads (Nov. 27, 2009) (attached to Motion for Reconsideration), D.E. #203-3. On this limited issue, the Court credits Glenmark's uncontradicted explanation for the omission. Thus, while Glenmark failed in its obligation to timely produce the PRACS clinical study reports, no misconduct occurred in connection with

the PRACS emails.

**B. Glenmark's Willful Failure to Search Appropriate Repositories**

The second and more significant instance in which responsive ESI discovery was not timely produced -- and the most thoroughly litigated aspect of the parties' ESI dispute -- involves copies of two patent applications that were drafted by Glenmark's outside patent attorney (Michael Carmen) and its patent agent (Louisa Lao) for submission to the United States Patent and Trademark Office ("PTO").[7]

In an earlier stage of the litigation, the Court addressed the circumstances under which these documents were belatedly produced to Nycomed:

> Glenmark first produced the two provisional applications on September 11, 2009, after Glenmark's employee, Dr. Vijay Soni, disclosed their existence during his deposition on August 6, 2009. Glenmark [then] disclosed the utility application on September 25, 2009, after Nycomed filed the first round of the [ESI-related motions].

11/12/09 M&O at 2, D.E. #189 (record citations omitted). Based on the expanded record, the Court now concludes that the underinclusiveness of Glenmark's ESI searches and the resulting omission of the patent applications were willful and not an inadvertent omission.

Glenmark admits that its ESI searches "did, in fact, identify emails relating to [the] patent applications, including copies of the applications." Letter in Response (Mar. 11, 2010) at 1, D.E. #255. However, Glenmark claims that it withheld the patent applications on privilege grounds because the applications, which were not saved as separate documents onto

---

[7] Although Glenmark also failed to produce an Indian provisional patent application during the discovery period, this Court previously ruled that Glenmark was not required to produce any "applications to or communications with foreign regulatory bodies." 7/30/09 M&O at 4–5, D.E. #112; 11/12/09 M&O at 2, D.E. #189.

Glenmark's file server, were attached to emails to and from Glenmark's outside patent attorney, and these emails "were created in the course of patent prosecution by patent agents and patent attorneys." Id. After Nycomed responded with skepticism to Glenmark's claim that no unattached copies of the applications existed in Glenmark's ESI systems, see Letter in Response (Mar. 5, 2010) at 1-2, D.E. #249, the Court scheduled an evidentiary hearing to explore these issues. The testimony adduced at that hearing, and the Court's *in camera* review of the allegedly privileged documents, belie Glenmark's justifications for withholding the documents.

### 1. The FIP Database

Glenmark maintains that the only copy of the U.S. provisional application that its ESI searches uncovered was attached to an email from its outside patent attorney, Michael Carmen. See 6/2/10 Tr. at 27, D.E. #351; 2/25/10 Soni Decl. ¶¶ 11, 12, D.E. #240; 2/11/10 Soni Decl. ¶ 17, D.E. #230; 2/25/10 Def. Letter at 1-2, D.E. #242. This email, sent in July 2008, was deemed privileged by Glenmark's litigation counsel and placed on its privilege log. See 2/11/10 Soni Decl. ¶ 17, D.E. #230; 2/25/10 Def. Letter at 1-2, D.E. #242.

As an initial matter, "[t]he attorney-client privilege . . . generally applies to draft patent applications, amendments, and supporting affidavits, unless the privilege is waived." In re Rivastigmine Patent Litig., 237 F.R.D. 69, 86 (S.D.N.Y. 2006) (citing Softview Computer Prods. Corp. v. Haworth, Inc., No. 97 Civ. 8815, 2000 WL 351411, at *17 (S.D.N.Y. Mar. 31, 2000)). Nevertheless, this protection does not apply to final versions of patent applications once they are filed with the PTO, as the privilege is "waived upon filing." In re Rivastigmine, 237 F.R.D. at 86 n.7. Glenmark's initial privilege log reflects that an email and attachment

were sent by Michael Carmen to multiple recipients[8] on July 8, 2008 -- the same day as the

filing of the U.S. provisional application.[9]   See 2/25/10 Soni Decl. ¶¶ 11-12, D.E. #240;

3/5/10 Pl. Letter Ex. A (filed under seal) at 9 (log entries 91, 92), D.E. #249.  Having

conducted an *in camera* review of the referenced email and its attachment, the Court finds that

the attachment was in fact a copy of the final, filed provisional application, and not a privileged

draft.  It was therefore improper for Glenmark to withhold this document.

In addition, Glenmark admits that another copy of the U.S. provisional application was

present in a Foundation IP ("FIP") database,[10] see 2/25/10 Soni Decl. ¶ 14, D.E. #240, 6/2/10

Tr. at 31, D.E. #351, which database Glenmark used to "store[] and manage[] its United States

patent applications," 2/11/10 Soni Decl. ¶ 18, D.E. #230, and that this copy of the provisional

application was downloaded by Louisa Lao as a template in drafting Glenmark's U.S. utility

application.  See 2/25/20 Soni Decl. ¶ 14, D.E. #240.  It is undisputed that copies of patent

applications uploaded by Glenmark to FIP's database were not included in Glenmark's ESI

production.  According to Dr. Soni, Glenmark "overlooked the Foundation IP website" as a

source for document production.  2/11/10 Soni Decl. ¶ 19, D.E. #230.  The Court rejects this

excuse as incredible.  It was Dr. Soni's decision to begin using the FIP system in March 2009

---

[8]   The six listed recipients included Vijay Soni.

[9]   See United States Patent Application No. 0090233891, U.S. Patent & Trademark Office,
Patent Application Full Text Image Database,
http://appft1.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnet
ahtml%2FPTO%2Fsearch-bool.html&r=1&f=G&l=50&co1=AND&d=PG01&s1=2009023
3891&OS=20090233891&RS=20090233891.

[10]   Dr. Soni described FIP as a "web-based document storage and docket management solution
for use by legal personnel in patent prosecution."  2/11/10 Soni Decl. ¶ 18, D.E. #230.

and he was well aware that FIP would soon become the sole repository for final patent

applications.  See 6/2/10 Tr. at 23, D.E. #351.

Equally misleading is Glenmark's contention that it did not exercise "control" over

documents on the FIP system because a third-party, CPA Global, owned the server and

managed it off-site.  See id. at 38; 2/11/10 Soni Decl. ¶ 18, D.E. #230 ("The Foundation IP

database . . . is not located on Glenmark's property or otherwise within Glenmark's control.").

As Dr. Soni acknowledged at the hearing, "any manipulation, addition or deletion of

documents on the FIP server was done by Glenmark representatives."  6/2/10 Tr. at 38, D.E.

#351.  In fact, this ability to manage the documents on the server was vested in only a handful

of Glenmark employees with considerable decisionmaking authority, including Drs. Soni and

Lao.  See id. at 36.  These employees utilized a password-protected account to access and

modify the documents, which were "never touched, modified, or deleted in any way by

Foundation IP."  Id. at 37.  Glenmark's exclusive and complete access to documents residing

on a third-party's server is sufficient to establish Glenmark's "control" over those documents

and thus to impose on Glenmark an obligation to conduct an appropriate ESI search of those

files.[11]  Cf. In re Flag Telecom Holdings, Ltd. Secs. Litig., 236 F.R.D. 177, 180 (S.D.N.Y.

2006); S.E.C. v. Credit Bancorp, Ltd., 194 F.R.D. 469, 472 (S.D.N.Y. 2000) (a finding of

control is warranted "where a corporate entity has the ability in the ordinary course of business

to obtain documents held by another corporate entity").  Given Dr. Soni's role in overseeing

---

[11]    That the FIP program is Web-based, and its servers possibly not amenable to the kinds of
keyword searches used on Glenmark's servers, does not alter this conclusion.  At a minimum,
Glenmark was required to identify the FIP database as a potential repository for responsive
documents; the parties could then have devised other means of searching the documents on the
FIP server.

the preparation of the utility application -- which was filed on March 10, 2009, <u>see</u>

Memorandum in Support (Sept. 29, 2009) at 1, D.E. #172 --  contemporaneously with his

supervision of the document production in this case, <u>see</u> 6/2/10 Tr. at 7, 15-33, 40, 42, D.E.

#351, this Court does not believe that the failure to search the FIP database was an innocent

oversight.  Rather, the Court finds that Glenmark willfully avoided searching that database,

thereby failing to identify and produce the provisional application filed by Michael Carmen, as

well as the utility application.

### 2. Dr. Lao's Laptop

Until the Court intervened to cure the deficiency, Glenmark failed to search a second,

equally obvious, repository for responsive ESI:  the laptop of Dr. Louisa Lao.  After learning

of Dr. Lao's involvement in drafting the utility patent application, the Court ordered Glenmark

to conduct an immediate ESI search of her laptop and email account using the parties' agreed-

upon search terms.  <u>See</u> Memorandum and Order (Mar. 25, 2010) at 2, D.E. #262.  Glenmark

produced six additional documents as a result of the search -- including copies of its U.S.

provisional and utility applications -- as well as a supplemental privilege log; Glenmark

claimed that the items produced were "duplicative of documents and information already in

Nycomed's possession."  Letter re ESI Search (Apr. 15, 2010) & Ex. A thereto, D.E. #283;

<u>see</u> Glenmark's Supplemental Privilege Log (filed under seal) ("Def. Supp. Priv. Log"), D.E.

#371.  In much the same manner that it sought to justify its belated production of the PRACS

documents, Glenmark has minimized the seriousness of the deficiency in its production of the

patent applications and other documents under Louisa Lao's control.

Even assuming that Nycomed was already in possession of most if not all of the six

documents produced by the belated search of Dr. Lao's laptop in April 2010, these items were not originally obtained by Nycomed through Glenmark's two ESI searches in the spring of 2009. In particular, the utility and provisional patent applications found on Dr. Lao's computer (and later produced in duplicate by Glenmark) would have remained undiscovered had Nycomed not first conducted depositions of Glenmark's personnel and obtained copies of other undisclosed documents from the third-party clinical testing agent, PRACS. In fact, it was not until August 6, 2009, when Dr. Soni was constrained to acknowledge their existence during his deposition, that Nycomed first became aware of Glenmark's utility and provisional patent applications. See 9/18/09 Pl. Letter at 2 & Ex. J thereto (filed under seal), D.E. #145.

Glenmark's excuses for failing to identify Dr. Lao as a records custodian are wholly unbelievable and inconsistent with other representations made by Glenmark employees. On the one hand, Glenmark claimed that Dr. Lao's involvement with its ANDA fluticasone lotion was "limited to the U.S. utility application" and began "sometime in February or March 2009." Second Supplemental Declaration of Vijay Soni, Ph.D. (Mar. 11, 2010) ("3/10/10 Soni Decl.") ¶ 15, D.E. #257. On the other hand, Glenmark's privilege log reflects responsive emails both to and from Louisa Lao dating back to December 2008. See Defendant's Privilege Log (log entries 187–91) (filed under seal as Exhibit A to Letter in Response (Mar. 5, 2010), D.E. #249); Def. Supp. Priv. Log (log entries 27-31), D.E. #371. More importantly, the patent applications in question involve what appears to be the allegedly infringing fluticasone lotion -- a generic version of the product claimed in the patent-in-suit; that those documents unquestionably were discoverable is confirmed by the fact that, in response to Nycomed's motion to compel the production of documents concerning fluticasone-containing lotions,

Glenmark assured the Court, in June 2009, that all such nonprivileged documents had been produced. See Memorandum and Order (July 30, 2009) ("7/30/09 M&O") at 2, D.E. #112; Letter to Magistrate Judge Mann (June 30, 2009) at 1-2, D.E. #90.[12] Glenmark's omission of Dr. Lao from the custodian list was beyond unreasonable.

What truly indicts Glenmark's credibility in attempting to minimize Dr. Lao's role is the closeness of the relationship between Dr. Lao and Dr. Soni, who not only hired her, but also served as the primary Glenmark employee tasked with designating ESI custodians in conjunction with the various department heads. See 6/2/10 Tr. at 8, D.E. #351. Toward the end of 2008, Dr. Soni, on Glenmark's behalf, personally hired Dr. Lao in order "to bring the patent filing activity in-house" and to operate the FIP system. Id. at 24. Like that of Dr. Soni, Dr. Lao's office was in Glenmark's Mahwah, New Jersey location, directly across from Dr. Soni's, and the two had daily contact with one another. See id. at 24, 40. Dr. Soni was well aware that Dr. Lao "was the person responsible for modifying the provisional application and creating or drafting the utility application" for Glenmark's fluticasone lotion. Id. at 41, 42. Even before Dr. Lao began reporting to him directly in the beginning of 2010, Dr. Soni received copies of most of the communications between her and Glenmark's in-house patent counsel Sean Ryder, her immediate supervisor at the time she was first hired. See id. at 39, 40.

Dr. Soni unpersuasively characterized the omission of Dr. Lao from the custodian list

---

[12] Although Judge Amon recently determined that Glenmark's patent applications "have no obvious relevance" to claim construction in this case, see Memorandum and Order (July 9, 2010) ("7/9/10 M&O") at 6, D.E. #353, she did not address their relevance to other issues in the litigation.

as an oversight and an "error on [his] part." Id. at 42. The Court regards such a characterization as a blatant distortion of the truth, belying the gravity of Glenmark's discovery abuses. In fact, the manner in which Glenmark avoided designating Dr. Lao as a custodian smacks of willfulness and a "bad faith effort to thwart plaintiff['s] discovery efforts." DLC Mgmt., 163 F.3d at 136. The purported brevity of Dr. Lao's work with the patent applications does not credibly excuse Glenmark's failure to include her laptop files in Glenmark's original ESI searches. The decisions by Glenmark, through Dr. Soni, (1) to avoid saving copies of the final utility and patent applications on its own file servers, and (2) to vest that responsibility with Dr. Lao, its newly hired patent agent, were deliberate stratagems. Glenmark, under Dr. Soni's direction, charged Dr. Lao with the responsibility for managing the drafting and finalization of the utility application, and Glenmark's failure to identify her as a custodian effectively eliminated Glenmark's primary source of document production for its utility application. As the court observed in Pension Committee, 685 F.Supp.2d at 465, "the failure to collect records -- either paper or electronic -- from key players constitutes gross negligence or willfulness . . . ." Here, the omission was plainly willful.

Thus, based in large part on this key omission and on Glenmark's failure to timely identify and search the FIP database, coupled with Glenmark's inadequate explanation for its withholding of the PRACS clinical study reports and its patent applications, the Court now deems discovery sanctions to be an appropriate form of relief.[13]

---

[13] The Court declines to order Glenmark to re-do its ESI searches or conduct a search of its backup tapes. With the belated search of Louisa Lao's laptop, and the production of copies of patent applications residing on FIP's server, the Court is satisfied that Glenmark's search of its

(continued...)

### III.    Appropriate Sanctions

Having considered the parties' arguments regarding sanctions, the expanded record, and the testimony of Dr. Soni, the Court concludes that substantial monetary fines, payable to Nycomed and to the Clerk of the Court, are appropriate sanctions, as they will adequately advance "the prophylactic, punitive and remedial rationales" of discovery sanctions. See Passlogix, Inc. v. 2FA Tech., LLC, 2FA, Inc., No. 08 Civ. 10986 (PKL), 2010 WL 1702216, at *37 (S.D.N.Y. Apr. 27, 2010) (internal quotation marks and citation omitted). The record establishes that:  (1) Glenmark had custody and control over its patent applications and the PRACS biostudies, and an obligation to timely produce these documents; and (2) despite its awareness of its discovery obligations, Glenmark failed to identify key locations for responsive ESI and did so in a deliberate attempt to conceal documents that it considered harmful to its litigation position. See generally In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (citing Residential Funding, 306 F.3d at 107).  Moreover, because Glenmark flouted its discovery obligations in a willful manner, the Court finds, as a matter of

[13](...continued)
ESI systems is now sufficient.  The Court finds that the file server in Goa, India, need not be searched, as the Goa facility does not produce steroids (such as Glenmark's fluticasone lotion), and its server thus would not contain ESI relevant to this litigation.  See 3/11/10 Soni Decl. ¶ 4, D.E. #257.  The email file server at Glenmark's facility in Baddi, India, where the fluticasone lotion was in fact manufactured, has already been searched on two occasions.  See Order (Apr. 5, 2010), D.E. #270.  As for Glenmark's backup tapes, the record establishes that, as the parties had not reached agreement to search their respective backup systems, neither side did so.  See Transcript of Civil Conference on May 20, 2010, at 86-89, D.E. #318; Transcript of Telephone Conference on May 14, 2010, at 36, D.E. #317; 2/25/10 Def. Letter at 3, D.E. #242; 3/11/10 Def. Letter at 3, D.E. #255.  "When accessible data satisfies the requirement to search for and produce relevant information, there is no need to save or search backup tapes."  Pension Comm., 685 F.Supp.2d at 479 n.99 (citing Fed. R. Civ. P. 26(b)(2)(B)).

law, that these documents are relevant to Glenmark's claims or defenses.  See In re Sept. 11th, 243 F.Supp.2d at 125 ("[A] finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced [] evidence as a matter of law; a finding that a party breached its obligations through negligence is 'frequently' sufficient") (citing Residential Funding, 306 F.3d at 109).

Nevertheless, the imposition of sanctions for the untimely production of documents should not result in a "windfall for uncovering evidence that would have made little difference in the underlying case." In re Sept. 11th, 243 F.R.D. at 125.  It is already clear from the record that the patent applications are not as significant as Nycomed claims, and that Nycomed has not been so prejudiced by their belated production as to warrant the most severe sanctions. See 11/12/09 M&O at 4-5, D.E. #189; see 7/9/10 M&O at 6, D.E. #353; see also cases cited supra p. 7.  Certainly, the PRACS biostudies are relevant to Glenmark's defense regarding vasoconstriction and, but for Nycomed's third-party subpoena on PRACS, Nycomed would have obtained the PRACS documents at a much later juncture, if at all.  The fact remains, however, that the documents were eventually produced, and that Nycomed sought and obtained depositions of PRACS and Glenmark personnel concerning these materials.  See 5/3/10 Def. Letter at 2, D.E. #298; Transcript of Oral Argument on December 4, 2009 ("12/4/09 Tr.") at 45, D.E. #213.  It thus does not appear that, in the long run, Nycomed was deprived of discovery to which it was entitled.  Consequently, the Court, in fashioning an appropriate sanction, will instead focus on addressing any prejudice that Nycomed may have suffered due to the delay resulting from this additional discovery-related litigation, as well as the burdens

imposed on Nycomed and the Court in pursuing answers to questions about Glenmark's ESI search methods.

As detailed above, the dispute over the adequacy of Glenmark's ESI disclosures has lasted about a year and has generated thousands of pages of filings. The volume of documentation has required the Court to expend tremendous time not only poring over dense addenda and appendices,[14] but also refereeing arguments between counsel that have, in many instances, devolved into vindictive bickering. See, e.g., 2/3/10 Tr. at 22, D.E. #233 (noting disagreeable relationship between counsel). The manner in which counsel have litigated discovery issues has significantly delayed the *Markman* process, and -- as Glenmark has repeatedly reminded the Court -- such a delay benefits the patent holder, Nycomed, see id. at 16, 18,[15] whose counsel often complained about the fast pace of the litigation. See, e.g., 12/4/09 Tr. at 84-85, D.E. #213. In light of these considerations, the Court cannot say that Nycomed was prejudiced by the delay in this case.

To be sure, Nycomed has been forced to expend considerable resources in pursuing the facts underlying Glenmark's discovery violations. Glenmark's derelictions, and its inability to justify its behavior despite its plethora of filings, have also unnecessarily expended the Court's time and energy. Thus, in attempting to craft a monetary fine that best suits "the facts and

---

[14]  At one point, the Court was compelled to issue an order reminding the parties of the Court's rules regarding the litigation of discovery disputes and setting forth additional limitations on sur-replies to each other's submissions. See Order (Feb. 12, 2010), D.E. #231.

[15]  Nycomed's exclusivity over the product market would be jeopardized if a generic manufacturer such as Glenmark gained ANDA approval and swiftly succeeded in defending an infringement action. See Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc., 527 F.3d 1278, 1285 (Fed. Cir. 2008).

evidentiary posture of this case," Passlogix, 2010 WL 1702216, at *37 (internal quotations and citation omitted), the Court concludes that an appropriate remedy for the undue delay caused by Glenmark is the imposition on Glenmark of a compensatory fine of $100,000 payable to Nycomed to cover a portion of its costs, and an additional monetary fine of $25,000 payable to the Clerk of the Court. See generally In re Sept. 11th, 243 F.R.D. at 132 (imposing substantial Rule 37 sanctions where delayed production of documents "multiplied proceedings and caused undue time and expense").

The Court has considered and, for several reasons, rejected ordering an award of "reasonable attorneys' fees" in Nycomed's favor. First, the Court has, on more than one occasion, admonished Nycomed for rehashing arguments in its submissions and in court proceedings. See, e.g., Order (Mar. 31, 2010) at 2, D.E. #267 ("If Nycomed persists in filing repetitious and unresponsive arguments, the Court will be constrained to strike its submissions."); Transcript of Telephone Conference on May 14, 2010, at 73, D.E. #317. Thus, the fees that Nycomed has incurred are likely to be unreasonably high. Second, given the protracted nature of the dispute, to invite filings concerning the reasonableness of Nycomed's attorneys' fees would only spawn more litigation and delay in a case that has already been grossly over-litigated.

In determining the amount of an appropriate sanction, the Court is permitted to consider, and has considered, the resources of the sanctioned party.[16] Glenmark is a

---

[16] See Passlogix, 2010 WL 1702216 at *37 (citing Shangold v. Walt Disney Co., 275 F. App'x 72, 74 (2d Cir. 2008)).

substantial multinational corporation,[17] and a more modest fine of $10,000 or $20,000 would amount to a proverbial slap on the wrist. The Court concludes that compensatory fines aggregating $125,000 are not unreasonable given Glenmark's financial resources, as well as the amount of sanctions levied in a recent case in this circuit involving delayed production and unnecessary discovery-related litigation. See In re Sept. 11th, 243 F.R.D. at 132 (reducing parties' requests for millions of dollars in attorneys' fees to a lump sum of $500,000, to be split between two moving parties).

## CONCLUSION

For the foregoing reasons, having found that Glenmark multiplied the proceedings in this action by willfully withholding and delaying production of documents responsive to Nycomed's discovery demands, the Court orders Glenmark to pay, within thirty days from the date of this Memorandum and Order, fines in the amount of $100,000 to Nycomed and $25,000 to the Clerk, U.S. District Court.

Any objections to the rulings contained in this Memorandum and Order must be filed with the Honorable Carol B. Amon, on or before **August 27, 2010**. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**          August 11, 2010**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE**

---

[17] According to Glenmark's annual report for fiscal year 2008-2009, the parent company -- Glenmark Pharmaceuticals, Ltd. -- posted consolidated revenues of $455,350,000. See Glenmark Annual Report 2008-2009, http://www.glenmarkpharma.com/Common/pdf/ annual_report08_09.pdf. That company also posted consolidated revenues for the first quarter of the 2009-2010 fiscal year of approximately $151,879,650. See Glenmark Pharmaceuticals Limited Unaudited Financial Results for the quarter ended June 30, 2010, http://www.glenmarkpharma.com/GLN_DWL/uploads/Result%20Sheet%20Q1%20FY11%20 one%20page.pdf.